BURTON (MILBURN v.). See Case No. 9,-541.

## Case No. 2,218.
### BURTON v. SALTER.

[Brunner, Col. Cas. 623;[1] 21 Law Rep. 148.]

Circuit Court, D. New Hampshire. 1857.

DESERTION—FORFEITURE OF SEAMEN'S WAGES FOR—MASTER—AUTHORITY OVER SEAMEN.

1. By the general maritime law desertion works a forfeiture of all wages previously earned.

[Cited in The John Martin, Case No. 7,-357.]
[See note at end of case.]

2. The master has authority to displace the mate and all subordinate officers during the voyage, being responsible for an abuse of his authority.

[Appeal from the district court of the United States for the district of New Hampshire.
[In admiralty. Libel for seaman's wages

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

by Joshua Burton against Henry F. Salter, master of the Albert Gallatin. Respondent appealed from a decree of the district court in favor of libelant. Reversed.]

J. W. Emery, for appellant.
F. W. Sawyer, for libelant.

CURTIS, Circuit Justice. This is an appeal by the respondent from a decree of the district court, in a cause of subtraction of wages. It appears that the libelant shipped as steward on board the Albert Gallatin at New York, in April, 1855, for a voyage thence to New Orleans, and some port in Europe, and back to the United States.

The vessel went from New Orleans to Liverpool; and on the day of her departure thence for the United States, the libelant went ashore in a boat, just as the vessel was getting under way, and did not return on board. The libel admits this, but alleges that the master ordered him ashore. This is disproved. The evidence clearly shows that the libelant voluntarily, and against the order of the master, went on shore with an intention not to come home in the ship. This amounts to a desertion, and forfeits all wages previously earned by the libelant, unless his departure was justified. For though there be not such an entry in the log as is necessary to evidence a statute desertion, according to the act of 1790, the general doctrine of the maritime law as to the nature and effect of desertion is not displaced by the statute regulations on that subject (Cloutman v. Tunison [Case No. 2,907]; The Rovena [Id. 12,090]); and if the libelant left the vessel, contrary to the order of the master, without justifiable cause, with an intention not to return, and having actually not returned, this is a desertion, under the general maritime law, and works a forfeiture of all wages previously earned. The inquiry, therefore, is, whether there was justifiable cause for such departure.

No cause is alleged in the libel, except that the master ordered the libelant to go on shore, and he was forced to obey. This, as already said, is not proved, the answer denies it, and the evidence clearly shows it was not true.

The libelant's counsel contends that the libelant was justified in refusing to return in the ship because the master had, without sufficient cause, removed him from the place of steward, and required him to go forward and do duty before the mast.

If the cause for such removal was sufficient, this position fails. By the maritime law the master may disrate either an officer or seaman for sufficient reasons. In this case the reasons entered on the log at the time when the man was deprived of his place of steward were that he was dishonest, filthy, and neglectful of his duty. The same reasons were assigned by the master to the vice-consul, to whom the man complained, and who applied to the master on the subject. If the allegation of dishonesty was well

founded, it afforded justifying cause for the removal of the libelant from the place of steward. As the steward is intrusted with the ship's stores, a dishonest embezzlement of them would alone be a good cause of disrating him. The answer of the master pleads: "I had some liquors on board, and kept the same locked, supposing I had the only key which would unlock the room. Said Burton ascertained that some of the keys intrusted to him as steward would fit the lock of the said room, and he used to go into the room and drink my liquors without my leave or knowledge. I learned this fact after my arrival in Liverpool." The second mate testifies that the master had liquors in a state room which he kept locked; and the same fact is sworn to by the person who succeeded the libelant as steward. The second mate also testifies that on the passage from New Orleans to Liverpool he saw the steward enter a state room which the captain kept locked; and that he heard him say in Liverpool he had liquor to drink and cigars to smoke, but did not have to pay for them. No explanation of this has been attempted by the libelant.

The same witness testifies that he did not keep the cabin clean and in good order on the passage to Liverpool; and the person who succeeded the libelant as steward testifies that he found the cabin dirty when he went on board.

It is urged by the libelant's counsel that the occasion for which the master turned the steward out of the cabin was, that he got into a quarrel with the mate, arising out of the steward's having women in the galley; and that this had nothing to do with the alleged cause of his dismissal. It is not so clear that an act of this nature might not justly be connected by the master with the dishonesty and filthiness assigned in the log book; and if not, such conduct, followed by insolent language to the first officer, who reproved him, may have induced the master then to act on the causes assigned, instead of delaying longer to do so.

It is also urged that the master, when he turned the man out of the cabin, did not assign him a place in the forecastle. I think the reason was that the man refused to act in any place but that of steward, and left the vessel. But I do not think it needful to examine minutely into the conduct of the parties after the steward had been informed that he was no longer to do duty in the cabin, and before the day of sailing; because I consider it proved that on that day the libelant was sent on board by the consul to come home in the ship; that the master was then willing to bring him home, he working on deck in such matters as he was capable of doing; that he refused to come home in that way, and went on shore; and that such refusal was unjustifiable, and such departure was a desertion.

In coming to this conclusion I have been influenced by a comparison of the allegations of the libel and answer with the proofs in the cause. The libelant's account of the acts and conduct of the parties is not only incorrect, but contains very gross departures from the truth, as shown by the testimony. On the other hand, the answer appears to have stated the case in detail fairly, is for the most part supported by some proofs in all its particulars, and is therefore justly entitled to some weight, in aid of presumptions arising from the evidence.

Indeed, as the libel puts the case upon an allegation that the master ordered the libelant to go on shore, and left him behind at Liverpool against his will, and this is denied by the answer, and disproved, it is attended with no small difficulty to allow the libelant wholly to shift his ground at the hearing, and insist, that though he voluntarily left the vessel against the order of the master, he was justified in doing so, because the master disrated him without reasonable cause. But, inasmuch as the answer admits the disrating, and that this was the reason why the libelant left the vessel, I have considered the libelant not absolutely precluded from availing himself of these admissions, and placing the case upon them (The Clement [Case No. 2,879]), though it is impossible not to feel the force of the objection which arises from such a misrepresentation by the libelant of the truth of the case.

It is insisted that as the libelant was entitled to receive one third of his wages in Liverpool, and there demanded them, these are not forfeited. If he had there asked for one third of his wages, and the master had wrongfully withheld them, the question would have risen whether a subsequent forfeiture would have extended to what was thus wrongfully retained. But what he demanded in Liverpool was not one third of his wages, but that his entire wages might be paid to him, so that he could quit the service of the vessel. The refusal of the master to accede to this demand was not wrongful, and therefore the supposed question does not arise.

Much ingenious commentary has been made upon the probable motives of the master, and his desire to be rid of the libelant, because he was to receive high wages, twenty-eight dollars per month, and the ship did not need a steward while lying at Liverpool. It appears that wages of stewards shipped there were from twenty dollars to twenty-five dollars a month, and that the ship was actually without a steward nine days after the libelant was discharged. These circumstances do not afford any very grave causes of suspicion of the motives of the master. Still, in all cases like this, where he has exercised an authority conferred on him by law over an inferior, his motives and conduct should be subjected to careful and somewhat jealous scrutiny. Having bestowed that scrutiny in this case, and being satisfied that the conduct

of the libelant afforded reasonable and lawful cause for displacing him from his station as steward, I am of opinion that all his wages were forfeited.

The decree of the district court which allowed the wages earned before the libelant left the vessel, so far as the same remained unpaid, must be reversed, and the libel dismissed. No costs are allowed to either party.

NOTE. Desertion—Forfeiture of Wages for. See The John Martin [Case No. 7,357], citing above case.

[NOTE. Wages previously earned are forfeited by desertion. Coffin v. Jenkins, Case No. 2,948; The John Martin, Id. 7,357; The Cadmus v. Matthews, Id. 2,282, reversing same case, Id. 2,280; The Swallow, Id. 13,664; The Rovena, Id. 12,090; The Philadelphia, Id. 11,084; The Merrimac, Id. 9,474; The Dawn, Id. 3,666. See Brower v. The Maiden, Id. 1,970. There must be animo non revertendi. The Rovena, supra; The Union, Case No. 14,347; The Elizabeth Firth, Id. 4,361. The desertion must occur during the voyage. Cloutman v. Tunison, Id. 2,907; Francis v. Bassett, Id. 5,037; The Martha, Id. 9,144; Piehl v. Balchen, Id. 11,137. As to the discretion of the court to enforce or mitigate the forfeiture, see Gifford v. Kollock, Id. 5,409; Coffin v. Shaw, Case No. 2,952; Lovrein v. Thompson, Case No. 8,557; Swain v. Holland, Id. 13,661.]